UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHANEL SENOR,

    Petitioner,

v.

WILLIAM P. BARR,
Attorney General;

THOMAS FEELEY,
Field Office Director for Detention and
Removal, Buffalo Field Office, Bureau of
Immigration and Customs Enforcement;

THOMAS BROPHY,
Facility Director, Buffalo Federal
Detention Facility,
and

JEFFREY SEARLS,
Facility Acting Director Buffalo Federal
Detention Facility,

    Respondents.

19-CV-716
DECISION AND ORDER

---

The Department of Homeland Security ("DHS") has detained the pro se petitioner, Chanel Senor, for more than nine months while they have attempted to remove him to Haiti. Senor claims that his continued detention violates the Due Process Clause and 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001), because his removal is not significantly likely to occur in the reasonably foreseeable future. Docket Item 8 at 7. He also argues that his prolonged detention "more than six months without a meaningful review of his detention" violates his procedural due process rights. *Id.* at 8.

For the following reasons, this Court agrees that Senor is due immediate relief with respect to his procedural due process claim. Moreover, there may well be "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, but the government will be given an opportunity to "respond with evidence sufficient to rebut that showing." *Id*. Therefore, Senor's petition is conditionally granted in part.

## BACKGROUND

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security, Immigration and Customs Enforcement. Other facts, provided by Senor, are undisputed.

### IMMIGRATION HISTORY, TIES TO THE UNITED STATES, AND CRIMINAL PROCEEDINGS

Senor is a citizen of Haiti. Docket Item 11-1 at 2. On July 27, 1981, Senor arrived at a United States port of entry without a visa. *Id*. He was paroled into the country for humanitarian reasons on August 13, 1981. *Id*.

In 1991, Senor was convicted of attempted criminal possession of cocaine in violation of New York State law. *Id*. In 1994, Senor was convicted of second degree murder and sentenced to a term of imprisonment of twenty years to life. Docket Item 11-2 at 2, 9.

### REMOVAL PROCEEDINGS

On June 27, 1997, the Immigration and Naturalization Service ("INS") terminated Senor's immigration parole status because of one of his criminal convictions. Docket

Item 11-1 at 2; Docket Item 11-2 at 7.[1] INS served Senor with a Notice to Appear notifying him that he was ineligible to be admitted to the United States because of his criminal convictions and advising him that he was subject to removal. *Id.* at 2-3. On January 20, 1998, Immigration Judge Mitchell A. Levinsky denied Senor's application for voluntary removal and ordered Senor removed from the United States to Haiti. Docket Item 11-2 at 16.[2]

After Senor's release from New York State incarceration, on November 5, 2018, DHS requested travel documents for Senor from the Haitian Embassy. *Id.* at 23-24. And on the same day, DHS provided Senor with notice of his obligation to assist DHS in obtaining his travel document. *Id.* at 22. On December 14, 2018, Senor interviewed with Haitian Consular officials in Miami, Florida, regarding his and DHS's request for his travel documents. *Id.* at 26.

---

[1] The record is silent as to which conviction resulted in INS's terminating Senor's parole status. *See* Docket Item 11-1 at 2; Docket Item 11-2 at 7.

[2] According to an affidavit provided by Eugene Fiorotto, a Deportation Officer at the Department of Homeland Security, Immigration and Customs Enforcement, the BIA dismissed Senor's appeal on April 2, 1998, and denied his motion to reopen the matter on May 4, 1998. Docket Item 11-1 at 3. But Fiorotto does not cite any document in the record regarding these appeals, and the record does not include any BIA decision regarding Senor's case. *Id.* The record does include DHS's request to the Haitian Embassy regarding Senor's travel documents. Docket Item 11-2 at 23. In that letter, DHS says that after Senor was ordered deported on January 20, 1998, he "accepted the Judge's decision as final and did not file an appeal with the" BIA. Docket Item 11-2 at 23. In the amended petition, Senor asserts that his "case was denied on [a]ppeal by the BIA." Docket Item 8 at 3.

**DETENTION-RELATED PROCEEDINGS**

On October 31, 2018, Senor was released from the custody of the New York State Department of Corrections and Community Supervision and taken into custody by DHS. Docket Item 11-2 at 26. On November 2, 2018, DHS issued Senor a "notice of custody determination," which notified him that he will be detained "pending a final administrative determination in [his] case." Docket Item 11-2 at 19. Senor "request[ed] an immigration judge review [that] custody determination." *Id.* But the record does not indicate that any such hearing before an immigration judge occurred—perhaps because, on November 5, 2019, DHS concluded that Senor was subject to a final order of removal. *See* Docket Item 11-2 at 20.

On February 5, 2019, a DHS Immigration and Customs Enforcement Deputy Field Office Director provided Senor with a "decision to continue detention." *Id.* at 26-27. Specifically, DHS informed Senor that his "custody status has been reviewed and it has been determined that [he] will not be released from the custody of U.S. Immigration and Customs Enforcement (ICE) at this time." *Id.* at 26. The decision was "made based on a review of [his] file and/or [his] personal interview and consideration of any information [he] submitted to ICE's reviewing officials." *Id.* The notice explained that Senor has

> shown a disregard for the laws of the United States by violating the conditions of [his] parole and being convicted of a violent aggravated felony. [Senor] falsely claimed Bahamian citizenship. [He has] not provided ICE with any community ties, familial ties, employment opportunities, or non-government agencies willing to assist [him]. Based on this ICE believe[d] that [Senor] may pose a risk of flight and a significant threat to the community. The Department of Homeland Security's enforcement priorities continue to be threats to national security, public safety, and border security.

4

> As such, [Senor is] to remain in ICE custody pending [his] removal from the United States.

*Id.* at 27.

On April 16, 2019, DHS notified Senor that it intended to interview him on April 23, 2019, as part of another custody review. *Id.* at 29-30. The notice informed Senor that "[r]elease from ICE custody is dependent on [Senor] demonstrating to the satisfaction of the Attorney General that [he] will not pose a danger to the community and will not present a flight risk." *Id.* at 29. After that interview, on May 21, 2009, DHS issued another decision to continue detention. *Id.* at 31. DHS told Senor that it was "currently working with the government of Haiti to secure a travel document for [his] removal from the United States. A travel document from the Government of Haiti is expected, therefore [Senor] is to remain in ICE custody at this time." *Id.*

On June 3, 2019, Senor filed a pro se petition for a writ of habeas corpus in this Court. Docket Item 1. On June 27, 2019, this Court granted Senor's motion to file an amended petition. Docket Item 10. On July 23, 2019, the government answered the amended petition, Docket Items 11-12, and on August 1, 2019, Senor replied, Docket Item 14.

## **DISCUSSION**[3]

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of

---

[3] In its memorandum of law, the government argues that the proper respondent in this matter is Jeffrey Searls, Senor's "custodian" at the Buffalo Federal Detention Facility. Docket Item 12 at 9-10. Because Searls is not specifically named as a respondent, the government argues, the petition must be dismissed. *Id.* Indeed, a core habeas petitioner must proceed against "some person who has the *immediate custody*

5

the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). In its answer, the government argues that Senor's "detention in DHS custody is in accordance with the INA and relevant Supreme Court precedent." Docket Item 11 at 4. Senor makes three arguments to the contrary. Docket Item 8 at 7-

---

of the party detained, with the power to produce the body of such party before the court or judge, [so] that he may be liberated if no sufficient reason is shown to the contrary." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (emphasis in original) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).

Senor did name Searls as a respondent in the initial petition but for some reason did not name Searls as a respondent in the amended petition. *See* Docket Items 1 at 3, 8 at 2. In the amended petition, Senor explains that he identifies Thomas Feeley, the Interim Field Office Director for Detention and Removal, and Thomas Brophy, the Facility Director of the Buffalo Federal Detention Facility, as respondents because, he says, they have "immediate custody" of him. Docket Item 8 at 3. It "would appear [that these respondents also] have . . . the capacity to produce [Senor] during his detention at the [Buffalo Federal Detention Facility]." *Khemlal v. Shanahan*, 2014 WL 5020596 at *2 n.3 (S.D.N.Y. Oct. 8, 2014). Indeed, Feeley and Brophy appear to be senior officials involved in the operations of the Buffalo Federal Detention Facility and do not appear to be "the Attorney General or some other remote supervisory official." *Padilla*, 542 U.S. at 435.

But the government does not argue that this Court is without personal jurisdiction over Searls. *See Zhen Yi Guo v. Napolitano*, 2009 WL 2840400, at *2, *5-*6 (S.D.N.Y. Sept. 2, 2009) (finding that habeas petitioner named incorrect respondent and transferring case because court did not have jurisdiction over proper respondent); *see also Salcedo v. Decker*, 2019 WL 339642, at *2 (S.D.N.Y. Jan. 28, 2019) (same). So even assuming that the government is correct—that only Searls has the custodial authority to produce Senor—the government's argument appears to elevate form over substance. Because Senor is proceeding pro se, this Court holds his petition "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The original petition named Searls, and the amended petition reflects Senor's attempt to name individuals acting in their official capacity at the Buffalo Federal Detention Facility who he believes are his immediate custodians. *See* Docket Item 8 at 3. Therefore, this Court construes the amended complaint to do just that. Because the government identifies that individual as Jeffrey Searls and the Clerk of Court has never removed Jeffrey Searls from the caption of his case after Senor filed his amended petition, no further action is necessary. And because this Court deems Jeffrey Searls to be a respondent, this Court need not resolve whether Feeley and Brophy are also sufficiently authorized to produce Senor so that Senor may instead name them as respondents.

6

8. First, he argues that his continued detention violates 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas*, 533 U.S. at 699. *Id.* at 7. Second, he argues that his continued detention violates his substantive due process rights because the government has detained him "in excess of six months and his removal is not significantly likely to [o]ccur in the [r]easonably [f]oreseeable [f]uture." *Id.* Finally, he argues that "his prolonged detention more than six months without a meaningful review of his detention" violates his procedural due process rights. *Id.* at 8.

Because Senor is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). And because the record indicates that Senor is entitled to immediate relief with respect to his procedural due process claim, this Court addresses that claim first.

I. **SENOR'S PROCEDURAL DUE PROCESS CLAIM AND 8 U.S.C. § 1231(a)(6)'S IMPLICIT BOND HEARING REQUIREMENT**

Senor argues that "his prolonged detention more than six months without a meaningful review of his detention" violates his procedural due process rights. Docket Item 8 at 8. The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and 'narrow' nonpunitive 'circumstances,' . . . where a special justification, such as harm-threatening mental illness, outweighs the

7

'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (internal citations omitted) (emphasis in original). Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty. That promise stands as one of the Constitution's most vital protections against arbitrary government." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019) (Gorsuch, J., announcing the judgment of the Court and delivering an opinion). "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").

"When government action depriving a person of . . . liberty . . . survives substantive due process inquiry, it must still be implemented in a fair manner." *United States v. Salerno*, 481 U.S. 739, 746 (1987). "This requirement has traditionally been referred to as 'procedural' due process." *Id.* In this case, DHS has reviewed Senor's custody twice. As part of one of those reviews, it provided Senor with a personal interview before deciding to continue his detention pending removal. Thus, DHS has provided Senor with some process regarding its deprivation of his liberty pending removal.

But there are serious questions about whether that process was constitutionally sufficient. In many instances when the government deprives a person of only a property

8

interest, "an impartial decision maker is essential" to satisfy procedural due process. *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). And in other civil detention contexts, procedural due process is not satisfied unless the government establishes the grounds permitting confinement by "clear and convincing evidence." *See Foucha v. Louisiana*, 504 U.S. 71, 86 (1992); *Addington v. Texas*, 441 U.S. 418, 433 (1979); *see also Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (internal citations omitted) (due process requires "an intermediate standard of proof—'clear and convincing evidence'—when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money.'").

Although Senor has had some opportunity to be heard as part of the custody-review process, that process did not involve a neutral decision maker and required Senor to carry the burden of proof. And this Court has held some statutes to be unconstitutional as applied when they authorize unreasonably prolonged detention without providing the detainee a robust hearing regarding the reasons justifying that detention. *See, e.g.*, *Campbell v. Barr,* 2019 WL 2106387, at *9 (W.D.N.Y. May 14, 2019). But "the nature of [an alien's due process] protection may vary depending upon status and circumstance." *Zadvydas*, 533 U.S. at 694; *see, e.g.*, *Clerveaux v. Searls*, 2019 WL 3457105, at *17 (W.D.N.Y. July 31, 2019).

"When 'a serious doubt' is raised about the constitutionality of an act of Congress, 'it is a cardinal principle that [courts must] first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" *Jennings v. Rodriguez,* 138 S. Ct. 830, 842 (2018) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)); *see United States ex rel. Paktorovics v. Murff*, 260 F.2d 610, 615 (2d

9

Cir. 1958). Therefore, for the reasons given by the Third Circuit in *Guerrero-Sanchez v. Warden York Cty Prison*, 905 F.3d 208, 224 (3d Cir. 2018), and by the Ninth Circuit in *Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011), 8 U.S.C. § 1231(a)(6) implicitly requires the government to provide "an alien facing prolonged [§ 1231(a)(6)] detention . . . a bond hearing before an immigration judge and [to release the alien] from detention unless the government establishes that the alien poses a risk of flight or a danger to the community." *Guerrero-Sanchez*, 905 F.3d at 224 (quoting *Diouf*, 634 F.3d at 1092). "The [g]overnment must meet its burden in such bond hearings by clear and convincing evidence." *Id.* at 224 n.12. Specifically, as this Court has explained in similar contexts, the "government is required, in a full-blown adversary hearing, to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person . . . or ensure that the alien will appear for any future proceeding." *Campbell*, 2019 WL 2106387, at *8 (internal citations omitted). And "an alien detained under § 1231(a)(6) is generally entitled to a bond hearing after six months (*i.e.*, 180 days) of custody." *Guerrero-Sanchez*, 905 F.3d at 226. [4]

---

[4] *Guerrero-Sanchez v. Warden York Cty Prison*, 905 F.3d 208 (3d Cir. 2018), was decided after the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), which held that 8 U.S.C. § 1225(b) and § 1226(c) unambiguously mandate detention without bond hearings during the completion of certain proceedings and rejected the Ninth Circuit's interpretation of § 1226(a). "[A] series of textual signals distinguishes the provisions at issue in [*Jennings*] from *Zadvydas*'s interpretation of § 1231(a)(6)." *Jennings*, 138 S. Ct. at 844. Congress's use of the word "'may' suggests discretion, [but] not necessarily . . . unlimited discretion" and "[i]n that respect the word 'may' [in § 1231(a)(6)] is ambiguous." *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001); *see also Guerrero-Sanchez*, 905 F.3d at 222 n.11 ("because we conclude that—unlike § 1226(c)—§ 1231(a)(6) is ambiguous, we will interpret the provision in a manner that does not raise . . . constitutional concerns."). For all those reasons, this Court agrees with the Third Circuit that while the doctrine of constitutional avoidance was

10

In this case, Senor has been detained under § 1231(a)(6) for more than nine months, and in that time he has never received the bond hearing that the statute implicitly required by the 180-day mark. *See id*. Therefore, the government shall release Senor unless he receives the bond hearing that § 1231(a)(6) requires.[5]

## II. REASONABLE FORESEEABILITY OF SENOR'S REMOVAL

Senor argues that his continued detention violates 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas*, 533 U.S. at 699. Docket Item 8 at 7. Section 1231 "addresses immigrants in the 'removal period,' the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the alien.'" *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018) (quoting 8 U.S.C. § 1231(a)(1)(A)).

The statute explicitly defines the beginning of the removal period as occurring "on the latest of the following:

(i)   The date the order of removal becomes administratively final.

(ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."

---

inappropriate as to mandatory detention under § 1225(b) and § 1226(c), it is not as to § 1231(a)(6).

[5] Senor was convicted of second-degree murder in 1994. Docket Item 11-2 at 2, 9. "Due process is not satisfied, however, by rubberstamp denials based on temporally distant offenses. The process due even to excludable aliens requires an opportunity for an evaluation of the individual's *current* threat to the community and his risk of flight." *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398 (3d Cir. 1999) (emphasis added).

*Id.* at 54-55 (quoting 8 U.S.C. § 1231(a)(1)(B)).  After the ninety-day removal period, "the Government 'may' continue to detain an alien who still remains here or release that alien under supervision."  *Zadvydas*, 533 U.S. at 683 (quoting § 1231(a)(6)).  But § 1231(a)(6) includes an implicit limit on "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States."  *Id.* at 689.

During the first six months of an alien's § 1231(a) detention pending removal, the detention is "presumptively reasonable."  *Id.* at 701; *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002) (and cases cited therein) ("presumptively reasonable '[six]-month period' for detention pending removal . . . commences at the beginning of the removal period.").

> After this [six]-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as "reasonably foreseeable future" conversely [must] shrink.  This [six]-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 701.

In this case, Senor's removal period presumably began on October 31, 2018, when he was released from state confinement.  *See* 8 U.S.C. § 1231(a)(1)(B)(iii).  The government does not argue that Senor's removal period was suspended under 8 U.S.C. § 1231(a)(1)(C).[6]  *See* Docket Items 11, 12.  Therefore, Senor's removal period expired

---

[6] Under 8 U.S.C. § 1231(a)(1)(C):

ninety days later—on January 29, 2019. And his period of "presumptively reasonable" detention pending removal expired about three months after that—on April 30, 2019. So it has been about nine months since Senor's removal period began, about six months since it ended, and about three months since the expiration of his presumptively reasonable detention.

What is more, Senor has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. "[G]ood reason to believe," *id*., does not place a "burden upon the detainee . . . to 'demonstrate' no reasonably foreseeable, significant likelihood of removal or 'show that his detention is indefinite,'"; it is something less than that. *D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 404 (W.D.N.Y. 2009). And this Court has determined that "the passage of time combined with" the "government [being] no closer to . . . repatriating [a detainee] than they were once they first took him into custody" as being sufficient to meet that "initial burden." *Singh v. Whitaker*, 362 F. Supp. 3d. 93, 102-03 (W.D.N.Y. 2019).

In this case, the process started smoothly enough. On November 5, 2018, only eight days after taking Senor into custody, DHS sent the Haitian Embassy a request for a travel document so that Senor could be removed. Docket Item 11-2 at 23-24. In that application, the government "respectfully request[ed] that [the embassy] issue a passport or other suitable travel document to Mr. SENOR within 30 days of this

---

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

13

request." *Id.* at 23. But after thirty days passed, the Haitian government apparently had not provided Senor with a travel document as requested. Instead, on December 14, 2018, Senor had an interview with the Haitian Consulate in Miami, Florida, to obtain travel documents for removal. Docket Item 11-1 at 4. And there is no indication from the record that *anyone* has taken *any* further action in the eight months since that time—a period longer than the entire presumptively reasonable period of detention.

The government argues that even if Senor has met his initial burden, it has "more than adequately rebutted this showing, justifying his continued detention under *Zadvydas*." Docket Item 12 at 12. Specifically, the government argues that "DHS is diligently working with the Embassy of Haiti in order to secure travel documents to facilitate [Senor's] removal." *Id.* But the government cites only two paragraphs in a deportation officer's declaration referring to the request for travel documents made back in November 2018 and Senor's interview with the Haitian Consulate the following month. *Id.* (citing Docket Item 11-1 at 4). The government argues that "DHS is expecting the travel documents to be issued in the near future," but points only to their own conclusory statement in their decision to continue detention saying the same thing. There is nothing in the record suggesting that the government has taken or is taking any further action to facilitate Senor's receipt of the necessary travel documents.

The government observes that many other individuals have been removed to Haiti. Docket Item 11-1 at 5. That might well be true, but it sheds little light on why *Senor's* removal has been delayed and what that means for *Senor's* prospects for removal occurring in the reasonably foreseeable future. *See Kacanic v. Elwood*, 2002 WL 31520362, at *4 (E.D. Pa. Nov. 8, 2002) ("Without any kind of information that would

14

allow for a meaningful comparison of these removed aliens to the Petitioner's case, the [statistics showing successful removals to a country do] not give any indication of whether or not the Petitioner will be removed in the near future."). As one court has explained in response to similar statistics offered as rebuttal evidence: "If the government is able to remove this number of [Haitians] annually, it may underscore the problems [it] has had attempting to remove petitioner." *Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 50 (D.D.C. 2002).

The government has not given this Court any reason to believe that removal is significantly likely to occur in the reasonably foreseeable future. Indeed, the Haitian Embassy did not provide Senor with travel authorization even close to the time when DHS requested it, and eight months have passed since there has been any identifiable progress toward Senor's removal.[7] So there is a real question about when—or even whether—that removal will occur.

Senor has been in DHS custody for only nine months. As this period grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. But at this point, what may count as the "reasonably foreseeable future" is sufficiently expansive to permit the government some additional time to develop the record and provide this Court with rebuttal evidence. *Cf. Shefqet v. Ashcroft*, 2003 WL 1964290, at *4 (N.D. Ill. Apr. 28, 2003) ("The period of Petitioner's

---

[7] The government relies on *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306 (W.D.N.Y. 2008), to argue that Senor's detention continues to be reasonable and his removal is still reasonably foreseeable. Docket Item 12 at 11-12. But for the reasons given by this Court in *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019), this Court "is far from certain" that the procedures outlined in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), were applied correctly in that case.

post-final-order detention has at this time exceeded seventeen months and so the 'reasonably foreseeable future' must now come very quickly.").

In sum, on the current record, "this Court is left to guess whether [Senor's] deportation might occur in ten days, ten months, or ten years." *Singh*, 362 F. Supp. 3d at 102. The government should provide evidence specific to Senor's case showing that his deportation in likely to occur in ten days or ten months, not ten years. Such evidence might include correspondence from Haitian officials indicating that they are moving swiftly to provide Senor with travel documents or explaining reasons for the delay that appear to be resolved or resolvable. Such evidence also might include "a date by which DHS reasonably expects [Senor] to be repatriated to [Haiti]," but only if the government also "includ[es] the reasons behind and evidence supporting that expectation." *Singh*, 362 F. Supp. 3d at 105. The government has sixty days to provide such evidence.

## III.  SUBSTANTIVE DUE PROCESS CLAIM

Senor also argues that his continued detention violates his substantive due process rights. Docket Item 8 at 7. Specifically, he argues that "his prolonged detention more than six months violates his [r]ight to substantive [d]ue process." *Id*. "But, pursuant to *Zadvydas*, [Senor's substantive] due process rights are not jeopardized by his continued detention as long as his removal remains reasonably foreseeable." *Wang*, 320 F.3d at 146. Because "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and because this Court has not yet

made that determination but will do so as soon as practicable, Senor's substantive due process rights have not been violated. *See Wang*, 320 F.3d at 146.

## IV. SENOR'S REQUEST THAT DHS NOT TRANSFER HIM

Senor asks that the government "not remove [him] from the jurisdiction of this [c]ourt during the duration of the consideration of this petition." Docket Item 8 at 8. But "[i]t is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985). In other words, regardless of where DHS may house Senor in the future, this Court retains jurisdiction over his habeas petition. So there is no need to interfere with DHS's authority to "arrange for appropriate places of detention" under 8 U.S.C. § 1231(g)(1).

## CONCLUSION

For the reasons above, Senor's petition is conditionally granted with respect to his procedural due process claim. **Within fourteen calendar days of the date of this decision and order**, the government must release Senor from detention unless he receives a bond hearing before an immigration judge and the government establishes by clear and convincing evidence that no conditions of release can reasonably ensure the safety of the community or any person or that Senor will appear for any future proceeding, consistent with the implicit requirements of 8 U.S.C. § 1231(a)(6).

This Court also concludes that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Therefore, "the Government must respond with evidence sufficient to rebut that showing," *id.*, **within sixty calendar days of the date of this decision and order**.

SO ORDERED.

Dated: August 15, 2019
         Buffalo, New York

    *s/ Lawrence J. Vilardo*
    LAWRENCE J. VILARDO
    UNITED STATES DISTRICT JUDGE